**Electronically Filed
Intermediate Court of Appeals
CAAP-12-0000651
29-NOV-2013
11:17 AM**

CAAP-12-0000651

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

STATE OF HAWAI'I, Plaintiff-Appellee,
v.
NIKOLAUS NETTER, Defendant-Appellant.

APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CR. NO. 11-1-1531)

MEMORANDUM OPINION
(By: Nakamura, C.J., and Fujise and Ginoza, JJ.)

Plaintiff-Appellee State of Hawai'i (State) charged
Defendant-Appellant Nikolaus Netter (Netter) by felony
information with second-degree burglary, in violation of Hawaii
Revised Statutes (HRS) § 708-811 (1993).[1] The felony information
charged that Netter "did intentionally enter unlawfully in a
building, to wit, the Embassy Suites, situated at 201 Beachwalk
Street, with intent to commit therein a crime against person or
property rights . . . ." After a jury trial, Netter was found
guilty as charged. The Circuit Court of the First Circuit
(Circuit Court)[2] originally sentenced Netter to probation for a
term of five years under Hawai'i's Opportunity Probation

---

[1] HRS § 708-811, in relevant part, provides that "[a] person commits the
offense of burglary in the second degree if the person intentionally enters or
remains unlawfully in a building with intent to commit therein a crime against
a person or against property rights."

[2] The Honorable Rom A. Trader presided over the proceedings at issue in
this appeal.

Enforcement (HOPE) program, with special conditions that included one year of incarceration to run concurrently with any other sentence being served, with credit for time served and subject to early release to an appropriate drug/alcohol and/or mental health treatment program. On July 24, 2012, the Circuit Court filed an "Amended Judgment of Conviction and Probation Sentence" (Amended Judgment), which modified its original sentence by reducing the special condition of incarceration to 162 days.

The charge against Netter stemmed from his entering an Embassy Suites Hotel in Waikiki (Embassy Suites Hotel), accessing the fourth floor at a time when it was reserved for registered hotel guests, and eating food from a breakfast buffet which was only for registered hotel guests. Approximately five months before the charged incident, the security department for the Embassy Suites Hotel had issued a trespass warning to Netter based on his eating food from the fourth floor breakfast buffet without being a registered hotel guest. The trespass warning notified Netter that he was prohibited from entering the premises for a period of one year.

On appeal, Netter contends that the Circuit Court abused its discretion "in allowing the State to introduce the prior bad-act evidence that Netter had previously been issued a trespass warning from the Embassy Suites Hotel." We disagree and affirm the Circuit Court's Amended Judgment.

BACKGROUND

I.

During the period relevant to this case, the Embassy Suites Hotel offered a complementary breakfast buffet that was limited to registered hotel guests. The breakfast buffet was served on the fourth floor, and access to that floor was generally restricted to hotel guests when breakfast was being served. There were signs in the area of the buffet that indicated that the buffet was for registered guests only.

On May 16, 2011, the security department for the Embassy Suites Hotel issued a trespass warning to Netter after he

2

was observed eating at the breakfast buffet and falsely claimed that he was a registered hotel guest. The trespass warning notified Netter that he was prohibited for a period of one year "from entering and/or returning onto" the premises of the Embassy Suites Hotel. It further notified Netter that failure to comply with the warning "will result in your arrest and prosecution for criminal Tresspass[.]"

On October 25, 2011, Netter entered the Embassy Suites Hotel through the front entrance, went into an elevator, obtained access to the fourth floor, and was observed eating food from the breakfast buffet. After hotel security confirmed that Netter was not a registered guest, Netter was detained by hotel security, the police were called, and Netter was arrested.

II.

Prior to trial, Netter filed a motion in limine to preclude the State from introducing evidence of "[t]he facts of, the circumstances of, and the reasons for [Netter's] trespass warning from Embassy Suites Hotel on May 16, 2011." In opposing Netter's motion, the State argued that based on Netter's pre-trial filings and his questioning of the prospective jurors, it was clear that Netter's defense was that he lacked the necessary intent to commit the charged offense. The State argued that the circumstances of the prior trespass warning were highly probative of Netter's intent and admissible under Hawaii Rules of Evidence (HRE) Rule 404(b) (Supp. 2012). The State asserted:

> [Netter] was previously caught on May 16th eating the breakfast buffet when he wasn't a registered guest, and he tried to lie to the officer, security, and tell them that he was registered. And eventually what they did on that day is they trespassed him and they told him not to come back because you are eating breakfast here and you're not a guest. And I think that goes directly to the heart of this entire case. I think that shows intent. And if that's their defense, I think the State is very free to open that up and bring that out in the prior trespass warning why he was trespassed and the fact the he did in fact know and he actually had the intent to take the breakfast again.

Netter indicated that he was willing to stipulate that he was not supposed to be at the Embassy Suites Hotel, but was

3

not willing to stipulate to anything beyond that. Netter argued that the State should not be allowed "to go into why [Netter] was given the trespass warning or that [Netter] was even given the warning." Netter acknowledged that his defense was that he did not "have the intent to commit a crime against person or property."

The Circuit Court granted in part and denied in part Netter's motion in limine. The Circuit Court ruled that the State would not be permitted to elicit the specific conduct engaged in by Netter (i.e., eating the breakfast buffet reserved for registered guests) which prompted the prior trespass warning. However, the State would be permitted to introduce evidence that "[Netter] was previously trespassed on May 16, 2011, for being on the hotel premises; that at that time he was not a hotel guest; and that at that time he was utilizing services otherwise reserved for hotel guests." The Circuit Court indicated that it would be willing to revisit its ruling depending on how the case developed and if the defense opened the door in a way that affected the Circuit Court's probative/prejudice analysis.

                               III.

At trial, the State presented evidence that during the period relevant to this case, Embassy Suites Hotel offered its registered guests a complementary breakfast buffet located on the fourth floor. When the buffet was being offered, a hotel guest's room key was required to operate the elevator and to have it stop on the fourth floor. However, a non-guest could access the fourth floor by entering the elevator and waiting for a hotel guest to use a room key or for the elevator to be called to the fourth floor. There were signs in the area of the breakfast buffet that stated that the breakfast was for registered guests only.

On May 16, 2011, Embassy Suites Hotel Security Officer Abel Silva (Silva) encountered Netter on the fourth floor. Silva and other security officers conducted a trespass investigation, after which the security department issued a trespass warning to

4

Netter. Silva described the trespass warning as a "form" that stated Netter was "not supposed to be entering hotel property for a period of one year." The State also introduced the written trespass warning issued to Netter. The State did not introduce evidence of the specific conduct or circumstances that prompted the issuance of the trespass warning.

Approximately five months later, in the morning on October 25, 2011, Netter was observed by Embassy Suites Hotel staff on the fourth floor eating at the breakfast buffet. When questioned, Netter stated that he was a guest at the hotel. Netter provided a room number and falsely identified himself as "Preston Thomas." Netter continued to eat while he was being questioned. When Netter was told that the information he provided was false, Netter acknowledged that he was not a hotel guest, but claimed that he had spent the night with a hotel guest who told Netter he could go eat the free breakfast. Netter gave another name for this hotel guest, which did not correspond to any registered guest at the hotel. When advised that the police were being called, Netter raised his voice and claimed that he wanted to file a complaint with the manager and talk to "the guest."

Netter then attempted to leave the scene. He was told by hotel security to stop. Netter attempted to push a security officer out of the way, and a scuffle ensued. Netter was restrained until the police arrived.

IV.

Netter testified in his own defense at trial. On direct examination, Netter testified that on October 25, 2011, he got up at about 6:00 a.m., after sleeping on the beach, and began walking around Waikīkī. He had been laid off from work the day before, was hungry, and had no money. According to Netter, he entered a building that unbeknownst to him was property of the Embassy Suites Hotel. Netter entered the building to go into a convenience store, but the store was not yet open. While waiting for the store to open, a nearby elevator opened and a man inside

asked if Netter was going up. Netter entered the elevator and got out on the fifth floor. He recalled that there was a breakfast on the fourth floor, so he walked down the fire exit to the fourth floor.

Netter saw guests walking to the buffet and "just mingled" and walked with them. Netter took food and a drink from the buffet. He sat down and began to eat, tying to "blend" with the registered hotel guests.

A short time later, Netter was approached by hotel staff, who asked Netter for his name and room number. Netter gave a false name and "Room 1208" as the room in which he was staying. Netter was then approached by a hotel security officer who told Netter that his name "didn't check out" and that he was not a registered guest. Netter then said that he was not a guest, but was a "guest of a guest." Netter realized that the security officer did not believe his story and so he "acted indignant," as if his "rights or something were being infringed" and attempted to leave. Security officers prevented Netter from leaving and he was taken to the hotel's security office until the police arrived.

On cross-examination, Netter admitted that he knew there was a breakfast buffet on the fourth floor; that he had no money to pay for breakfast that day; and that he knew that the breakfast was not "free." Netter also admitted that he had lied to hotel personnel and that he had previously been "trespassed" from the hotel and informed that he could not come back. While Netter was not sure about the time line, he conceded that five months before the charged incident sounded "about right" for the prior trespass warning.

On redirect examination, Netter confirmed that he knew the breakfast buffet was not meant for him. However, he stated that there was no cash register in the vicinity of the buffet and so he could not have paid for the buffet even if he had wanted to pay.

V.

In closing, defense counsel argued that Netter did not intend to commit a crime against person or property rights when he entered the Embassy Suites Hotel premises.  Defense counsel argued that it was Netter's intent to feed himself, not to commit a crime.  Defense counsel noted that there was no cash register and no way for Netter to pay for the breakfast, and counsel likened Netter's conduct to crashing a party.  The defense contended that Netter's conduct constituted the crime of trespass, but not burglary.

DISCUSSION

I.

Netter contends that the Circuit Court abused its discretion in allowing the State to introduce prior bad-act evidence that Netter had previously received a trespass warning from the Embassy Suites Hotel.  Netter acknowledges that the evidence that Netter had previously received a trespass warning from the Embassy Suites Hotel was relevant.  Netter concedes that "[a]s the defense put Netter's intent upon entering the hotel at issue, evidence that he had previously committed the same type of offense was relevant to establish his intent."

Netter also acknowledges that the Circuit Court had precluded the State from presenting evidence about the specific basis for the prior trespass warning.  Netter, however, contends that the Circuit Court did not go far enough because even with the limitation on the specific information that could be introduced regarding the prior incident, "the unmistakable implication was that Netter had [previously] committed the same offense[.]"  Netter therefore claims that the Circuit Court abused its discretion and violated HRE Rules 404(b) and 403 (1993) in admitting evidence that the Embassy Suites Hotel had previously issued a trespass warning to Netter.  As explained below, we conclude that Netter's claim is without merit.

II.

HRE Rule 404(b) provides, in relevant part, that:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible where such evidence is probative of another fact that is of consequence to the determination of the action, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, modus operandi, or absence of mistake or accident.

Under HRE Rule 404(b), "other bad act" evidence is admissible when: 1) it is relevant to any fact of consequence other than the defendant's propensity to commit the crime charged; and 2) its probative value is not substantially outweighed by the danger of unfair prejudice. State v. Renon, 73 Haw. 23, 31-32, 828 P.2d 1266, 1270 (1992). The trial court's decision in balancing probative value against unfair prejudice involves the application of HRE Rule 403[3/] and is reviewed for abuse of discretion. State v. Cordeiro, 99 Hawai'i 390, 404, 56 P.3d 692, 706 (2002).

III.

In order to establish the charged second-degree burglary, the State was required to prove that Netter (1) intentionally entered the Embassy Suites Hotel unlawfully (2) with the intent to commit a crime therein against a person or against property rights. Evidence that the Embassy Suites Hotel had issued a trespass warning to Netter only five months before the charged offense was highly relevant to proving the charged offense. Netter's lack-of-intent defense only served to increase the probative value of this evidence.

Evidence of the prior trespass warning showed that Netter knew that he was not permitted to enter the Embassy Suites Hotel and demonstrated that he intentionally entered the Embassy

---

[3/] HRE Rule 403 (1993) provides:

> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

Suites Hotel unlawfully. By showing that Netter intentionally entered unlawfully and by negating Netter's claim of an unknowing or accidental entry into the Embassy Suites Hotel, this evidence also served to prove that Netter entered with the intent to commit a crime against a person or property rights therein.

We note that evidence of the specific details regarding Netter's prior trespass warning -- namely, that the warning had been issued after Netter was caught by hotel security eating at the breakfast buffet and falsely claimed that he was a registered hotel guest -- would have been highly relevant to disprove Netter's defense that he did not enter the hotel with the intent to commit a crime against property rights or persons. The Circuit Court, however, precluded the State from adducing the specific basis for the prior trespass warning. We therefore are not called upon to decide whether the Circuit Court's decision to admit evidence of the prior trespass warning, without limitation, would have been permissible. We conclude that the Circuit Court did not abuse its discretion in permitting the State to introduce evidence regarding Netter's prior trespass warnings under the limitations the Circuit Court imposed. See State v. Steger, 114 Hawai'i 162, 171-73, 158 P.3d 280, 289-91 (App. 2006) (holding that evidence of the defendant's uncharged drug activities was admissible under HRE 404(b) to prove the defendant's knowledge and intent regarding the charged drug offenses).

We reject Netter's claim that the Circuit Court erred in failing to give a limiting instruction regarding the prior trespass warning. Netter did not request a limiting instruction regarding this evidence. See HRE Rule 105 (1993) (only requiring the trial court to give a limiting instruction "upon request"). We conclude that as a matter of legitimate trial strategy, Netter's counsel may have decided to forego requesting a limiting instruction to avoid drawing attention to the evidence of the prior trespass warning and the implication that it may have involved conduct similar to the charged offense. See State v. Munson, No. 30495, 2012 WL 5677857, at *4-5 (Hawai'i App. Nov.

15, 2012) (Memorandum Opinion) (citing the reasoning in <u>State v. Cabagbag</u>, 127 Hawai'i 302, 315-16, 277 P.3d 1027, 1040-41 (2012)).

CONCLUSION

We affirm the Circuit Court's Amended Judgment.

DATED:  Honolulu, Hawai'i, November 29, 2013.

On the briefs:

Jon N. Ikenaga
Deputy Public Defender
for Defendant-Appellant

Loren J. Thomas
Deputy Prosecuting Attorney
City and County of Honolulu
for Plaintiff-Appellee

*Craig H. Nakamura*
Chief Judge

*[signature]*
Associate Judge

*[signature]*
Associate Judge